IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

AVNET, INC.,

        Plaintiff,

vs.

CATALYST RESOURCE GROUP,
LLC and DAVID A. WILD,

        Defendants.

No. C13-0021

RULING ON MOTIONS FOR
SUMMARY JUDGMENT

## TABLE OF CONTENTS

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*II.*   *PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.*  *RELEVANT FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*IV.*  *SUMMARY JUDGMENT STANDARD* . . . . . . . . . . . . . . . . . . . . . . . 5

*V.*   *DISCUSSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *A.*   *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    *B.*   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        *1.*   *Would* RESTATEMENT *§ 13 Allow Assignment of the*
            *Guaranty?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        *2.*   *Is* RESTATEMENT *§ 13 the Law in Iowa?* . . . . . . . . . . . . . 18

*VI.*  *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I. INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment (docket number 16) filed by Plaintiff Avnet, Inc. ("Avnet") on January 23, 2014, the Resistance (docket number 23) filed by Defendant David A. Wild ("Wild") on February 28, and the

Reply (docket number 28) filed by Avnet on March 11. Also before the Court is the Cross-Motion for Summary Judgment (docket number 24) filed by Wild on February 28, the Resistance (docket number 31) filed by Avnet on March 24, and the Reply (docket number 32) filed by Wild on March 26. Pursuant to Local Rule 7.c, the motions will be decided without oral argument.

## II. PROCEDURAL HISTORY

On March 13, 2013, Plaintiff Avnet, Inc. filed a complaint against Defendants Catalyst Resource Group, LLC ("Catalyst") and David A. Wild, seeking judgment on a promissory note and guaranty. Avnet claimed that Catalyst owed money on a promissory note issued in favor of Laurus Technologies, Inc. ("Laurus"), which was subsequently assigned to Avnet. Avnet also asserts that Wild is liable on the note by virtue of his personal guaranty.

On May 23, 2013, Wild filed a *pro se* answer, denying the material allegations. In an affirmative defense, Wild asserted that Avnet was seeking to recover an amount in excess of the rights which it obtained pursuant to a Forbearance Agreement with Laurus.

Also on May 23, Avnet filed a request for entry of default against Catalyst. The Clerk of Court docketed a default entry on the following day. On June 12, Avnet filed a motion for entry of default judgment against Catalyst. On July 2, the Court ordered that judgment enter in favor of Avnet and against Catalyst in the amount of $770,065.80, plus post-judgment interest in the amount of 0.16% per annum. The Clerk of Court then entered judgment against Catalyst in that amount.

Meanwhile, on June 21, the Court adopted a Scheduling Order and Discovery Plan submitted by Avnet and Wild. Also at that time, the case was referred to me for the conduct of all further proceedings and the entry of judgment, in accordance with 28 U.S.C. § 636(c) and the consent of the parties. After consulting with counsel, this matter has been scheduled for a nonjury trial beginning on October 14, 2014.

On January 23, 2014, Avnet filed its instant motion for summary judgment. Avnet argues that it is undisputed the note remains unpaid, Wild signed a personal guaranty, and judgment should enter accordingly. On February 28, Wild (who is now represented by counsel) filed a resistance to Avnet's motion for summary judgment and filed a cross-motion for summary judgment. Wild argues, among other things, that he signed a "special guaranty," rather than a "general guaranty," thereby prohibiting Avnet from enforcing the guaranty given to Laurus.

### III. RELEVANT FACTS

According to Wild's affidavit, Catalyst Resources Group, LLC has only two members: Braveheart Equity Holdings, LLC and Orion's Pride, LLC. Wild is the sole member of Braveheart. Bruce Willey is a member of Orion's Pride. Wild served as manager of Catalyst. Willey is a licensed attorney and served as Wild's personal attorney and as corporate attorney for Catalyst.

According to Wild, it was intended that Catalyst would be a lender or investor in "start-up and development projects including timber, ethanol, and land development projects." Wild avers that "[w]e anticipated raising approximately $100,000,000.00 in capital for these investments." Because neither Wild nor Willey had "sufficient personal resources," they knew it would be necessary to obtain "outside financing."

Willey was a close friend of John Udelhofen, CEO of Laurus Technologies, Inc., and did legal work for Laurus. In his affidavit, Willey states that he believed Laurus was "financially a very strong company." According to Wild, Laurus had sales in 2007 of about $56 million and income from its operations of over $1.2 million. According to Willey, the parties discussed Catalyst investing more than $25 million in various development and other projects being pursued by Laurus.

It was agreed that Laurus would lend Catalyst $500,000 as "seed money" to secure additional financing. According to Wild, the money would be used "to compensate the

3

owners of bank certificates of deposit, US Treasury bills, or other secure collateral who, in exchange for this compensation, would allow Catalyst to obtain financing by pledging the secure assets as collateral." Wild asserts that Catalyst had previously engaged a Belgium investment banking firm to assist in that process.

On May 5, 2008, Catalyst signed a promissory note in favor of Laurus for the principal sum of $500,000. The note required interest paid at the rate of 8% per annum. The due date was March 31, 2009. The note was executed by Wild as manager for Catalyst. The promissory note includes language relating to "JOINT AND SEVERAL OBLIGATION."

> This Note shall be the joint and several obligation of the Borrower and all sureties, guarantors and endorsers, if any, and shall be binding upon them and their successors and assigns. This means that the rights of the Holder may be enforced against the persons who are obligated to pay the sums owing under this Note either individually or together.

Contemporaneously, Wild signed an individual "GUARANTY," which states:

> The undersigned do hereby personally guarantee, severally and jointly, to Laurus Technologies, Inc, the Holder, full, complete and timely performance by the Borrower, of all obligations of the Borrower under the foregoing Promissory Note.

The promissory note was modified 13 times — extending the due date — with the final extension executed on March 8, 2012. Pursuant to the modification, the due date was extended from March 31, 2012 to June 30, 2012.

Upon receipt of the $500,000 from Laurus, Catalyst wired the money to Ramis, Limited ("Ramis"). According to Wild, he was assured by Willey that the $500,000 would be secured by US Treasury bonds or similar financially solid collateral. Willey assured Wild that he would handle the closing of the transaction "so that this collateral would be obtained and held in escrow until Ramis had obtained the additional financing

4

for Catalyst." Instead, the money was sent and no security was received. Ramis failed to obtain additional financing and, apparently, the money is gone.

On August 29, 2012, Laurus assigned the promissory note to Avnet. Laurus had previously borrowed $2.9 million from Avnet, as evidenced by a promissory note dated November 21, 2011. Laurus was unable to pay Avnet the amount owed. As part of a Forbearance Agreement, Laurus agreed to assign the Catalyst promissory note and Wild guaranty to Avnet. According to its terms, the assignment was "effective as of May 8, 2012."

In September 2012, an attorney for Avnet sent a letter to Catalyst, demanding payment of $500,000, plus interest, not later than September 19, 2012. On November 2, 2012, Avnet's attorney wrote to Wild in his capacity as guarantor, and demanded payment not later than November 9, 2012. It is undisputed that neither Catalyst nor Wild have paid any amount on the promissory note.

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to a material fact "'exists if a reasonable jury could return a verdict for the party opposing the motion.'" *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Humphries v. Pulaski County Special School District*, 580 F.3d 688, 692 (8th Cir. 2009)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to establish the existence of a genuine dispute as to a material fact, the non-moving party "'may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Instead, the non-moving party "'must

5

substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873); *see also Anderson*, 477 U.S. at 248 (A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party."). "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

## V. DISCUSSION

It is undisputed that on May 5, 2008, Wild signed a promissory note in his capacity as manager of Catalyst. The note obligated Catalyst to pay Laurus the sum of $500,000, plus interest. The note — which was extended by modification multiple times — is now due. It is also undisputed that nothing has been paid on the note. A default judgment has been entered in favor of Avnet and against Catalyst in the amount of $770,065.85, plus post-judgment interest.

It is undisputed that contemporaneously with the execution of the note, Wild executed a personal guaranty.[1] Wild personally guarantees full, complete, and timely performance of all Catalyst's obligations under the note. Significantly, however, the

---

[1] The Court notes parenthetically that the guaranty is grammatically incorrect. That is, while Wild is the sole guarantor, the guaranty is written in language which suggests multiple guarantors. For example, the guaranty states "[t]he undersigned *do* hereby personally guarantee," rather than "[t]he undersigned *does* hereby personally guarantee." Also, the guaranty states that the undersigned personally guarantee, "severally and jointly," obligations under the promissory note. It is undisputed, however, that Wild is the only guarantor.

guaranty is directed "to Laurus Technologies, Inc., the Holder." Wild asserts that the guaranty cannot be enforced by Avnet as Laurus' assignee.

## A. Applicable Law

The law recognizes various types of guaranties: A guaranty may be general or special, continuing or restricted, and absolute or conditional. 38A C.J.S. *Guaranty* §§ 8-9 at 582 (2008); 38 Am. Jur. 2d *Guaranty* §§ 14-17 at 961-966 (2010). Here, we are concerned with whether Wild's personal guaranty was "general" or "special" and, if it is a special guaranty, whether it can be effectively assigned to Avnet.

A "general" guaranty applies to all potential creditors, and "effectively promises all those creditors that the principal's obligations will be performed." *Flying J, Inc. v. Booth*, 773 P.2d 144, 146 (Wyo. 1989). *See also New Holland, Inc. v. Trunk*, 579 So.2d 215, 217 (Fla. App. 1991). A "special guaranty," on the other hand, references only one creditor and "ordinarily only the named or specifically described promisee acquires rights." *New Holland*, 579 So.2d at 217. *See also Flying J*, 773 P.2d at 147. In this case, Wild's guaranty is unambiguously directed "to Laurus Technologies, Inc, the Holder."

It is undisputed that on August 29, 2012, Laurus assigned the promissory note and guaranty to Avnet in a "COLLATERAL ASSIGNMENT OF PROMISSORY NOTE," pursuant to a Workout/Forbearance Agreement executed by Laurus and Avnet on May 8, 2012. Courts around the country have struggled with the issue of whether special guaranties may be enforced by an assignee. "At common law, a general guaranty is assignable or transferable, but a special guaranty is not." *Flying J*, 773 P.2d at 147. *See also New Holland*, 579 So.2d at 217 ("[A] general guaranty is assignable while a special guaranty is generally not assignable because extending credit constitutes the exercise of discretion and a guaranty agreement naming a particular creditor as promisee implies special trust and confidence placed by the guarantor in the named creditor and the

assignment of the guarantee to another prospective creditor materially alters the guarantor's undertaking."). Various courts have recognized "exceptions" to the general rule, however, depending on whether the debt results from credit extended by the original creditor, or is debt extended by the assignee. *Id.* at 219. Also, some courts have held that once a right of action on the special guaranty has arisen, it has become fixed and could be assigned. *Flying J*, 773 P.2d at 147 n.2 (citing cases).

Some courts adhere to a strict rule that special guaranties are not assignable. In *Flying J*, the guarantors executed a special guaranty in favor of Husky Oil Company. Husky later assigned its interests, including the guaranty, to Flying J. The Wyoming Supreme Court concluded that because the guaranty was "personal" to a specific creditor, it could not be enforced by Flying J.

> A guarantor's liability cannot be extended by construction or
> by implication beyond the express terms of the guaranty.
> Unless a given transaction is expressly included within the
> guaranty, the guarantor is not liable upon the debtor's default.
> A guarantor is liable only for the payment of debts expressly
> guaranteed.

*Flying J*, 773 P.2d at 149 (internal citations omitted). *See also B.S.G. Foods, Inc. v. Multifoods Distribution Group, Inc.*, 54 S.W.3d 553, 557 (Ark. App. 2001) ("A special guaranty is one addressed to particular persons and may not be enforced by any person other than to whom it is addressed."); *Gateway Frontier Properties, Inc. v. Selner, P.C.*, 974 S.W.2d 566, 570 (Mo. App. 1998) ("A special guaranty may not be assigned to another without the guarantor's consent."); *FinanceAmerica Private Brands, Inc. v. Harvey E. Hall, Inc.*, 380 A.2d 1377, 1380 (Del. Super. 1977) (finding that a guaranty was addressed to specific named obligees and was intended only for their benefit and, therefore, was non-assignable).

On the other hand, some courts recognize the assignability of special guaranties if they are limited to the debt owed prior to the assignment. In *New Holland*, the guarantor

executed a guaranty agreement in favor of Sperry-New Holland. The creditor later sold its business and assigned the guaranty to its successor, New Holland, Inc. The assignee (New Holland, Inc.) continued to extend credit to the debtor. The Florida appellate court found that the guaranty was a "special guaranty" because it was addressed solely to the original creditor (Sperry-New Holland). 579 So.2d at 217. The Court noted that while special guaranties generally cannot be assigned, an "exception" has been recognized when, following the breach of a special guaranty, the creditor assigns his cause of action against the guarantor. *Id.* After a lengthy discussion of Florida precedent, the Court concluded that while an assignee cannot enforce a special guaranty relating to debt extended by the assignee, it can enforce the guaranty as to the debt resulting from credit extended by the original creditor.

> The assignee of a special guaranty cannot enforce the special guaranty as to debt the assignee has created by extending credit to the debtor. An assignee of debt and of a special guaranty relating thereto can enforce the guaranty as to debt resulting from credit extended by the original creditor to the debtor, whether or not that assigned debt is due or past due at the time of the assignment.

*New Holland*, 579 So.2d at 219.

State courts have also split on the issue of whether a guaranty addressed to a corporation may be enforced by the corporation's successor. *See, e.g.*, *Kraft Foodservice, Inc. v. Hardee*, 457 S.E.2d 596, 598 (N.C. 1995). In *Kraft Foodservice*, the North Carolina Supreme Court recognized the general rule that if a guaranty "names as obligees certain definite persons, it is a special guaranty; only the persons intended to be protected by a special guaranty may enforce it." *Id.* Nonetheless, the Court concluded that a successor corporation may enforce a special guaranty under certain circumstances.

> [W]e conclude that rights under a special guaranty — that is, a guaranty addressed to a specific entity — are assignable unless: assignment is prohibited by statute, public policy, or

9

> the terms of the guaranty; assignment would materially alter
> the guarantor's risks, burdens, or duties; or the guarantor
> executed the contract because of personal confidence in the
> obligee. This rule is consistent with the common law of
> contracts, accommodates modern business practices, and
> fulfills the intent of parties to ordinary business agreements.

*Kraft Foodservice*, 457 S.E.2d at 598-99. (As will be discussed below, this view is consistent with the RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY, § 13.)

These distinctions were discussed by the Eighth Circuit Court of Appeals — applying Missouri law — in *In re Modern Textile, Inc.*, 900 F.2d 1184 (8th Cir. 1990). There, a lessee's parent company and sister company guaranteed the lessee's obligations under a commercial lease. The lessor subsequently sold the property and assigned the lease (but not the guaranties) to a third party. When the lessee subsequently defaulted on the lease, the original lessor (which was required to pay its assignee the balance owed) sued on the guaranties. The Court concluded that because the original lessor had transferred all of its ownership rights to the third party, it had divested itself of any cause of action against the guarantors.

The *Modern Textile* court then considered whether the purchaser of the property had a claim under the guaranties, which the original lessor "later succeeded to" by paying the purchaser the amount due on the lease, "under the doctrine of subrogation." *Id.* at 1189. The Court rejected that argument.

> In order for such a transfer to have occurred, the guaranty
> must have been in the nature of a "general guaranty," which
> by definition "is one for acceptance by the public generally,"
> and which is assignable under principles of contract law. As
> previously noted, however, the district court expressly found
> that the defendants' guaranty was a specific guaranty. . . .
> Missouri courts have consistently held that a special guaranty
> may not be assigned to another without the guarantor's
> consent, because "the liability of a guarantor is to be construed

10

> strictly according to the terms agreed upon, and a guarantor is
> bound only by the precise words of his contract."

*In re Modern Textile*, 900 F.2d at 1189 (internal citations omitted).

The parties have not cited any Iowa authority directly on point, and the Court has found none. There are several cases, however, which the Court finds instructive. In *Northwest Bank & Trust Co. v. Witt Exp., Inc.*, 804 N.W.2d 314 (Table), 2011 WL 3116872 (Iowa App.), the holder of a note brought an action against two guarantors. The issue there was *not* whether the guaranties were "general" or "special," but instead involved the question of whether the guaranties were "continuing." Nonetheless, the Court's discussion is instructive regarding the manner in which guaranties are construed under Iowa law.

> A guaranty is a contract by one party to another party for the
> fulfillment of the promise of a third party. The extent of a
> guarantor's obligation must be determined from the parties'
> written contract. Accordingly, the rules concerning the
> interpretation and construction of contracts are applicable to
> guaranties.

*Northwest Bank*, 2011 WL 3116872 at *3. In determining a guarantor's obligation under the guaranty, "[w]e construe guaranty contracts according to the intention of the parties as ascertained by the language used in the contract and the circumstances of the guaranty." *Id.* at *5. "[G]uaranties are to be strictly construed according to their terms and not be extended or enlarged by implication." *Id.* at *8. *See also Interstate Elec. Supply Co. v. Blanchard*, 682 N.W.2d 81 (Table), 2004 WL 433730 (Iowa App.) ("The liability of a guarantor cannot be extended by implication when the terms of the Guaranty are clearly established.").

In *Union Trust & Sav. Bank v. State Bank*, 188 N.W.2d 300 (Iowa 1971), the Court recognized the difference between a general guaranty and a special guaranty executed by the guarantor and addressed to a sole creditor. In *Union Trust*, however, the issue was

11

whether the guaranty was "continuing" in nature and not whether a special guaranty could be assigned. In *Fidelity Sav. Bank v. Wormhoudt Lumber Co.*, 104 N.W.2d 462 (Iowa 1960), the Court recognized, under facts which are distinguishable from the instant action, that "[i]t is the established rule that a guarantor is discharged from his obligation by any act on the part of the guarantee which increases the guarantor's risk or in any manner injures his rights or remedies." *Id.* at 466.

In *Williamson Heater Co. v. Whitmer*, 183 N.W. 404 (Iowa 1921), the Court considered a special guaranty in which the guarantor required the creditor to promptly notify him of any default. That is, the guaranty was "both special and conditional." *Id.* at 405. The Court recognized that a guarantor may establish the terms of his special guaranty. "One who undertakes to guarantee payment of the debt of another has the right to make the terms and conditions upon which he will assume the burden, and if the conditions so prescribed are not complied with or waived, the guarantor is discharged." *Id.*

> A contract of guaranty is *strictissimi juris*, and one in which the guarantor has the right to prescribe the exact terms upon which he will enter into the obligation, and to insist on his discharge if those terms are not observed. It is not a question whether he is harmed by a deviation to which he has not assented.

*Williamson Heater*, 183 N.W. at 405 (quoting *Schoonover v. Osborne*, 79 N.W. 264 (Iowa 1899).

With these general principles in mind, the Court now turns to the facts in the instant action.

### B. Analysis

The guaranty signed by Wild is short, straight-forward, and unambiguous. In it, Wild personally guarantees "to Laurus Technologies, Inc, the Holder" complete and timely performance of Catalyst's obligations under the promissory note executed by Catalyst.

Because the guaranty is directed to a specific creditor, the Court concludes that it is a "special" guaranty. *Union Trust*, 188 N.W.2d at 302 (finding a guaranty executed by the guarantor "for benefit of her husband," was a "special guaranty"); *Williamson Heater*, 183 N.W. at 405 (finding a guaranty directed to an identified creditor was a "special" guaranty). Avnet argues that Wild's guaranty is not a "special" guaranty, because it is not identified as such in so many words. Avnet failed to cite any authority, however, for the proposition that a special guaranty must be self-identified as a "special guaranty."

It is undisputed that the promissory note and guaranty were assigned by Laurus to Avnet. The issue then becomes whether a special guaranty executed by Wild in favor of Laurus can be enforced by Avnet as assignee. The guaranty signed by Wild is silent on this critical issue. Avnet argues that the RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY, § 13, provides the guaranty may be assigned. Wild argues that Iowa has not adopted § 13 of the RESTATEMENT, and that common law prohibits the assignment of a special guaranty.

In support of its argument, Avnet relies heavily on the Iowa Supreme Court's decision in *Hills Bank & Trust Co. v. Converse*, 772 N.W.2d 764 (Iowa 2009). The facts in *Hills Bank* are somewhat convoluted. The guarantor (also referred to by the Court as the "secondary obligor") signed a document entitled Continuing Guaranty (Limited). The guaranty limited the guarantor's liability to $30,000. When the guaranty was executed, the guarantor questioned the term "continuing" and was told by a bank officer that "the guaranty she signed was only for this one note." *Id.* at 767. The language of the guaranty provided, however, that it was "absolute and continuing." The promissory note was subsequently paid, and a copy of the paid note was sent to the guarantor. Also at that time, however, the original borrowers executed a new note with the bank. *Id.* at 768.

Two years later, the guarantor was contemplating a divorce from one of the original borrowers, and called the bank to inquire about her obligation under the guaranty. The

13

bank officer "assured her the note had been paid off a long time ago, that her guaranty was complete, and she was no longer liable for the debt." *Id.* Three years later, when the original borrowers were obtaining partial refinancing with another financial institution, the bank required the guarantor to sign a letter identifying herself as a limited guarantor on the second note. The bank then prepared a third note for the balance owed by the original borrowers. Four years later, when the borrowers defaulted on the note, the bank sued the guarantor for $30,000. Both parties filed motions for summary judgment.

The issues in *Hills Bank* were whether the guarantor's obligation was "continuing," and whether the guarantor had a right of reimbursement against the borrower and a right of contribution against a coguarantor. *Id.* at 766-67. Because the note and guaranty were never assigned by the bank to a third party, it was not necessary to determine if the guaranty was "general" or "special." The Iowa Supreme Court concluded that genuine issues of material fact precluded entry of summary judgment on the guaranty. In its analysis, the Court adopted § 22 of the RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY (1996) — addressing the borrower's obligation to reimburse the guarantor — finding that it was consistent with the Court's language in *Halverson v. Lincoln Commodities, Inc.*, 297 N.W.2d 518 (Iowa 1980). *Id.* at 772.

The issues raised in *Hills Bank* have nothing to do with the issue raised in this case. Rather, Avnet cites *Hills Bank* for the proposition that because the Iowa Supreme Court has adopted § 22 of the RESTATEMENT, it is also likely to adopt § 13 of the RESTATEMENT. Wild argues that Iowa has not adopted § 13, and application of § 13 would prevent assignment of the guaranty in this case in any event. The Court will first consider whether § 13 permits an assignment under these circumstances.

### 1. Would RESTATEMENT § 13 Allow Assignment of the Guaranty?

RESTATEMENT § 13 does not speak in terms of "general" or "special" guaranties. Rather, it provides generally that the rights of the obligee (in this case Laurus) against the

secondary obligor (in this case Wild) arising out of the secondary obligation (*i.e.*, the guaranty) can be assigned unless:

> (a) the substitution of a right of the assignee for the right of the obligee would materially change the duty of the secondary obligor or materially increase the burden or risk imposed on it by its contract; or

> (b) the assignment is forbidden by statute or is otherwise ineffective as a matter of public policy; or

> (c) the assignment is validly precluded by contract.

RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY (1996), § 13(1).

It is clear that the exceptions found in subsections (b) and (c) do not apply here. That is, assignment of the guaranty is not forbidden by statute or a violation of public policy, and the guaranty does not state that it cannot be assigned.[2]  Accordingly, § 13 of the RESTATEMENT would permit the assignment of the guaranty unless the substitution of Avnet for Laurus "would materially change the duty" of Wild or "materially increase the burden or risk" on Wild.  Here, Wild argues that Laurus was a "friendly" creditor, and therefore the assignment to Avnet materially increased his risk.  The RESTATEMENT makes it clear, however, that "the possibility that the assignee might exercise its rights under the assigned obligation differently than the assignor does not in itself materially change the duty of the secondary obligor or materially increase the burden or risk imposed on it by its contract."  § 13(3).  Furthermore, a provision in the guaranty which purports to limit its assignment does not preclude "an assignment of a right to damages for breach" of the guaranty.  § 13(4)(b).

---

[2] As will be discussed below, Willey claims it was his intention the guaranty could not be assigned.  If he had simply included an additional sentence to that effect, this controversy could have been avoided.

Wild argues, however, that the assignment increases his "risk" and, therefore, the exception found in subsection (a) prevents the guaranty from being assigned. In his affidavit, attorney Bruce Willey states that he drafted the promissory note and guaranty which are at issue in this case. According to Willey, he had "many discussions" with Wild and John Udelhofen (Laurus' CEO) in negotiating the terms of these documents. Willey asserts that directing the guaranty to Laurus only was "intentional on my part."

> In preparing the Guaranty portion of the attached document, I did not include any provision which would allow the guaranty to be assigned to or enforced by any person or entity other than Laurus. And I omitted any reference to any successor or assign of Laurus. This was intentional on my part. For example, in drafting the guaranty I identified the obligee as being only Laurus and I stated that the Holder of this note was to be Laurus. It was my intention that only Laurus have the ability to enforce this guaranty and that it not be assignable.

Affidavit of Bruce Willey at 1, ¶ 3 (docket number 23-4 at 45).

Willey goes on to state the reasons for drafting the guaranty "so as to prevent its assignability." According to Willey, he and Wild "wanted to make sure that the note signed by Catalyst was to always remain with what we considered to be a friendly creditor." [3] Willey avers that he and Udelhofen were "close friends," and that because of the friendship "Laurus would be much less inclined to pursue collection of the guaranty than would a creditor who did not have the friendship that John Udelhofen and I had."[4] Willey also asserts that Catalyst had a special relationship with Laurus, because Catalyst was considering investing substantial funds in various development projects of Laurus.

> Catalyst did not want its note assigned to a creditor who did not have the sort of mutual commitment and confidence that

---

[3] Affidavit of Bruce Willey at 1-2, ¶ 4(a) (docket number 23-4 at 45-46).

[4] *Id.* at 2, ¶ 4(b) (docket number 23-4 at 46).

> goes with having shared business ventures of this size because
> if Laurus was not tolerant of a default it would not get the
> financing from Catalyst that it needed to complete these
> projects.

Affidavit of Bruce Willey at 2, ¶ 4(d) (docket number 23-4 at 46). According to Willey, "[i]f I had intended that the guaranty at issue be assignable, I would have included language to that effect in the guaranty."[5] Willey does not explain why, if he intended the guaranty would *not* be assignable, he did not include language to that effect.

The Court concludes that the RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY, § 13, would permit the assignment of Wild's guaranty, notwithstanding the fact that the guaranty specifically identified Laurus Technologies, Inc. as the "Holder." The RESTATEMENT generally permits the assignment of guaranties, without regard to whether they would traditionally be considered a "general guaranty" or "special guaranty." In his reply brief, Wild concedes that the RESTATEMENT "does away with the distinction between General Guaranties and Special Guaranties and makes all guaranties assignable absent specific circumstances."[6]

The "specific circumstance" Wild relies on here is subsection (a), which prohibits assignment if the assignment would materially change Wild's duty under the guaranty or materially increase the burden or risk imposed by the guaranty. Here, the assignment to Avnet does not materially change Wild's "duty." That is, Wild has a duty to guaranty Catalyst's performance on the note. Wild claims that the assignment from a "friendly creditor" to a third-party increases the "risk" imposed on him by the guaranty, but the RESTATEMENT explicitly states that "the possibility that the assignee might exercise its rights under the assigned obligation differently than the assignor does not in itself

---

[5] *Id.* at 3, ¶ 6 (docket number 23-4 at 47).

[6] Wild's Reply Brief (docket number 32-2) at 2.

materially change the duty of the secondary obligor or materially increase the burden or risk imposed on it by its contract." RESTATEMENT § 13(3). Accordingly, the RESTATEMENT would permit Avnet to pursue Wild's obligation under the guaranty. The Court rejects Wild's argument that because he had "a great deal of personal confidence with Laurus," disputed facts would preclude summary judgment under application of the RESTATEMENT.[7]

### 2. *Is RESTATEMENT § 13 the Law in Iowa?*

While the RESTATEMENT would allow the guaranty to be assigned, that does not end the Court's analysis. Wild argues that the Iowa courts have not adopted § 13 of the RESTATEMENT, and are unlikely to do so. Wild asserts that this case is governed instead by the general common law rule that special guaranties are non-assignable. Accordingly, I am required to predict whether the Iowa Supreme Court, if called upon to do so, would adopt RESTATEMENT § 13 regarding the assignment of guaranties.

Unfortunately, the Court is provided with little guidance. In 2009, the Iowa Supreme Court adopted § 22 of the RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY (1996). *Hills Bank*, 772 N.W.2d at 772. In doing so, the Court noted that § 22 — regarding the principal obligor's duty to reimburse the guarantor — is "consistent with our language in *Halverson*." *Id.* While Iowa courts have recognized the distinction between "general" and "special" guaranties, they have not been called upon to address the issue of whether a special guaranty may be assigned, or under what conditions. Accordingly, there is no clear indication whether RESTATEMENT § 13 is consistent or inconsistent with Iowa case law.[8]

---

[7] Wild's Reply Brief (docket number 32-2) at 3.

[8] Apparently, the Iowa appellate courts have only referred to the RESTATEMENT (THIRD) OF SURETY AND GUARANTY on one other occasion. In *Gallagher, Langlas &* (continued...)

As set forth above, cases from other jurisdictions vary regarding the assignability of special guaranties. According to the Reporter's Note to the RESTATEMENT, however, the "dominant view" is expressed in "Comment a" to § 13:

> a. *Application of general contract principles*. The secondary obligation, as a contract, is subject to general contract principles concerning assignment. The historical common-law rule that choses in action could not be assigned has largely disappeared and now has minimal application to contract rights. Generally speaking, the rights of the obligee pursuant to the secondary obligation, as contract rights, are assignable except as provided in this section.

RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY, § 13, Comment a.

Consistent with the RESTATEMENT, Iowa courts recognize that guaranties are subject to contract law principles. In the recent case of *Northwest Bank*, 2011 WL 3116872 (Iowa App. 2011), the Iowa Court of Appeals noted that a guaranty is a contract and "the rules concerning the interpretation and construction of contracts are applicable to guaranties." *Id.* at *3. In this regard, § 13 is consistent with Iowa law.

The Iowa cases also instruct us that guaranties must be "strictly construed according to their terms and not be extended or enlarged by implication." *Northwest Bank*, at *8. A guarantor's liability cannot be extended by implication "when the terms of the Guaranty are clearly established." *Interstate Elec. Supply*, 2004 WL 433730 (Iowa App. 2004). Guaranties are construed "according to the intention of the parties as ascertained by the language used in the contract and the circumstances of the guaranty." *Northwest Bank* at *5.

---

[8](...continued)
*Gallagher v. Burco*, 587 N.W.2d 615, 618 n.1 (Iowa App. 1998), the Court cited favorably § 11 of the RESTATEMENT, regarding the statute of frauds and surety contracts.

The guaranty in this case imposed a duty on Wild to ensure "full, complete and timely performance" of the promissory note by Catalyst. Assignment of the guaranty does not change Catalyst's obligation under the note or Wild's duty under the guaranty. While Willey and Wild may have intended that the guaranty not be assigned, there is no evidence in this record that Laurus shared that understanding, and the guaranty itself is silent. The secret intention of one party to a contract is not controlling. *First Northwestern Nat. Bank v. Crouch*, 287 N.W.2d 151, 153 (Iowa 1980). While Wild may have believed that Laurus was a "friendly creditor," the Court concludes that assignment of the guaranty to Avnet did not change Wild's risk of having to perform in the event of Catalyst's default.[9] *Fidelity Sav. Bank*, 104 N.W.2d at 466 (discharging a guarantor from his obligation by any act which increases the guarantor's risk).

The Court finds Wild's remaining defenses are also without merit. Wild claims that he is not required to perform under his guaranty "because of the failure of a condition precedent to his liability."[10] According to Wild, it was intended that Ramis would provide collateral to Catalyst to secure the $500,000 provided to Ramis as "seed money." Neither the promissory note given to Laurus nor the guaranty signed by Wild make any reference to this alleged "condition precedent." That is, Wild's guaranty was not "conditional" or "limited" as now claimed. The Court also rejects Wild's argument that his guaranty is limited to $100,000, because the assignment "represents" that the outstanding principal

---

[9] The Court notes parenthetically that Laurus was becoming less "friendly" regarding Catalyst's $500,000 obligation. Wild concedes in his affidavit that Laurus (presumably because of its own financial difficulty) was unwilling to extend the note for the length of time requested by Catalyst. *See* Affidavit of David A. Wild (docket number 23-4) at 6, ¶ 13.

[10] Wild's Brief (docket number 23-3) at 9.

balance is "$100,00.00" [*sic*].[11] The first page of the assignment refers to the note in the principal sum of $500,000 and the note is assigned without limitation. Accordingly, the apparent scrivener's error on page 2 of the assignment is significant, if at all, to the amount owed on the note, and not the enforceability of the guaranty.

In summary, the Court concludes that the RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY, § 13, is consistent with Iowa law and, if called upon to do so, it is likely the Iowa courts will adopt the RESTATEMENT. For the reasons discussed in more detail above, the Court concludes that the assignment of Wild's guaranty to Avnet does not change Wild's duty to guarantee performance, or materially increase the risk that he is required to pay upon Catalyst's default. It is undisputed that Catalyst's note and Wild's guaranty were assigned to Avnet. It is also undisputed that Catalyst is in default. Even viewing the evidence in the light most favorable to Wild, the Court finds that there are no genuine issues of material fact in dispute, and Avnet is entitled to judgment on the guaranty as a matter of law.

The Court assumes that the amount owed on the note approximates the judgment entered in favor of Avnet and against Catalyst on July 2, 2013. Since that time, however, additional interest has accrued. Accordingly, Avnet must submit an affidavit regarding its calculation of the amount now due on the promissory note. Wild will then be given an opportunity to respond to Avnet's calculation in that regard. If necessary, the Court will schedule a hearing on that limited issue. After the amount owed on the note is established, the Court will order entry of judgment.

---

[11] Collateral Assignment of Promissory Note (docket number 16-2) at 2, ¶ 3(c).

## VI. ORDER

IT IS HEREBY ORDERED as follows:

1. The Motion for Summary Judgment (docket number 16) filed by Avnet, Inc. is **GRANTED**.

2. The Cross-Motion for Summary Judgment (docket number 24) filed by David A. Wild is **DENIED**.

3. Not later than **April 21, 2014**, Avnet must file and serve a sworn affidavit regarding the current amount owed under the promissory note. Not later than **April 28, 2014**, Wild may file a response to Avnet's affidavit. If necessary, the Court will hold a hearing on the limited issue of the amount owed on the promissory note. After the amount owed is established, the Court will order entry of judgment in favor of Avnet and against Wild on the guaranty.

DATED this 14th day of April, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA